FILED

2022 Mar-02  PM 01:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| QUENTINCE JACKSON o/b/o Z.J., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-01260-NAD |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER
## AFFIRMING THE DECISION OF THE COMMISSIONER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Quentince Jackson brings this action on behalf of her minor child, Z.J., seeking judicial review of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner") on her claim for Supplemental Security Income (SSI) based on Z.J.'s autism spectrum disorder, oppositional defiant disorder, persistent depressive disorder, attention deficit hyperactivity disorder, accommodative esotropia, strabismus, and severe headaches.  Doc. 1.  Plaintiff Jackson applied for benefits on October 4, 2013, and the Commissioner denied her claim.  Doc. 14-3 at 13; Doc. 14-9 at 42–60.

Pursuant to 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73, the parties have consented to magistrate judge jurisdiction.  Doc. 16.  After careful

consideration of the parties' submissions, the relevant law, and the record as a whole, the court **AFFIRMS** the Commissioner's decision.

## ISSUES FOR REVIEW

In this appeal, Plaintiff Jackson argues that the court should reverse the Commissioner's decision for two reasons: (1) the Administrative Law Judge (ALJ) erred in determining that Z.J.'s impairments did not meet "Listing 112.10" (autistic disorder and other pervasive developmental disorders), and "Listing 112.11" (attention deficit hyperactivity disorder), or the functional equivalent of those "Listings"; and (2) the ALJ failed to accord proper weight to the opinion of psychologist Dr. Dennis Sizelove.[1]  Doc. 20 at 4.

## STATUTORY AND REGULATORY FRAMEWORK

A claimant applying for Social Security benefits bears the burden of proving disability. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  A child under the age of 18 is disabled, and consequently entitled to SSI benefits, if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

[1] Jackson's briefing refers to Dr. Sizelove as "the Commissioner's consultative psychologist."  Doc. 20 at 4.  But the record shows that Dr. Sizelove was a treating psychologist to whom Z.J.'s therapist had referred Z.J., and not a consultative psychologist during Z.J.'s disability proceedings.  Doc. 14-8 at 20–29.

12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security Administration (SSA) reviews an application for disability benefits in three stages:   (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1)–(4).

The SSA applies a three-step sequential evaluation in deciding whether a child is eligible for SSI benefits.   This evaluation involves the following determinations:  (1) whether the child is engaged in "substantial gainful activity"; (2) whether the child suffers from "medically determinable impairment(s)" that is/are "severe"; and (3) whether the child has an impairment or combination of impairments that "causes marked and severe functional limitations [and] meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings." 20 C.F.R. § 416.924.  If a claimant does not meet the threshold requirements of any step in the sequential analysis, then the Commissioner will deny disability benefits.

With respect to functional equivalence to a "Listed Impairment" (or "Listing"), the SSA uses six "domains" to determine whether a child's impairments functionally equal a "Listing":   (1) "acquiring and using information"; (2) "attending and completing tasks"; (3) "interacting and relating with others"; (4) "moving about and manipulating objects"; (5) "caring for

yourself"; and (6) "health and physical well-being." 20 C.F.R. § 416.924a(b)(1)(i)–(vi).

To establish that an impairment functionally equals a "Listing" (at step three of the sequential analysis), the child's impairment or combination of impairments must result "in 'marked' limitations in *two* domains of functioning or an 'extreme' limitation in *one* domain." 20 C.F.R. § 416.926a(a) (emphasis added).

A "marked" limitation is defined as an impairment that "interferes seriously" with a child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).

The SSA describes an "extreme" limitation as "more than marked," but it "does not necessarily mean a total lack or loss of ability to function." 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation requires that a child's impairment "interferes very seriously" with the "ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(3).

### STANDARD OF REVIEW

The federal courts have only a limited role in reviewing a plaintiff's claim under the Social Security Act; the court reviews the Commissioner's decision to determine whether "it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

**A.** With respect to fact issues, pursuant to 42 U.S.C. § 405(g), the

Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

In evaluating whether substantial evidence supports the Commissioner's decision, a district court may not "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the ALJ. *Winschel v. Commissioner of SSA*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks and citation omitted); *see Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (similar). If the ALJ's decision is supported by substantial evidence, the court must affirm, "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford*, 363 F.3d at 1158 (quoting *Martin*, 894 F.2d at 1529).

But "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden*, 672 F.2d at 838 (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)); *see Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (similar).

**B.** With respect to legal issues, "[n]o . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper

standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.

## BACKGROUND

### A.    Z.J.'s personal and medical history

Z.J. was born on April 3, 2006, and was 7 years old when she applied for disability in 2013.  Doc. 14-6 at 2.  Z.J. has a history of vision problems, including accommodative esotropia, corrected by glasses.  Doc. 14-8 at 14–18, 62–64.

In July 2013, Z.J.'s therapist—Rosa Statom—noted that Z.J. had psychological problems, including oppositional defiant disorder, but Statom did not mention autism or attention deficit hyperactivity disorder (ADHD).  Doc. 14-8 at 41–43.  Z.J. continued seeing Statom for counseling through the fall of 2013.  Doc. 14-8 at 44–48.

In September 2013, Z.J.'s therapist referred her for evaluation to Dr. Dennis Sizelove, a licensed psychologist, because of Z.J.'s disruptive behavior at home. Doc. 14-8 at 20–29.  Dr. Sizelove administered the Kaufman Brief Intelligence Test, Second Edition (KBIT-2), the Behavioral Assessment System for Children, Second Edition (BASC-2), Parent Rating Scales-Preschool (PRS-P), and Behavior Rating Inventory of Executive Function (BRIEF).  Doc. 14-8 at 20–21.  Among other things, Dr. Sizelove reported a significant difference in Z.J.'s verbal and performance scores, which he found indicative of Z.J.'s having a greater ability to complete visuospatial tasks than those requiring verbal fluency.  Doc. 14-8 at 25–

28.   Dr. Sizelove further determined that Z.J.'s scores on the KBIT-2 reflected below-average intellectual functioning when compared to others her age.  Doc. 14-8 at 25–28.   Dr. Sizelove concluded that Z.J.'s results were consistent with the diagnostic criteria for both autism spectrum disorder (with accompanying intellectual impairment), as well as ADHD, persistent depressive disorder, and overanxious disorder of childhood.  Doc. 14-8 at 25.

In November 2013, Z.J.'s kindergarten teacher—Jennifer Bradley—completed a teacher questionnaire.  Doc. 14-7 at 41–48.  Bradley stated that Z.J. only had trouble acquiring and using information, not in other areas, and only because she needed to wear her glasses.  Doc. 14-7 at 41–48.

In December 2013, as part of Z.J.'s disability proceedings, Dr. Robert Estock opined that Z.J. only had "marked limitation" in interacting and relating with others, and had less than marked limitation in acquiring and using information, attending and completing tasks, caring for herself, and health and physical well-being.  Doc. 14-4 at 6–8.

In January 2014, Statom (Z.J.'s therapist) completed a "Mental Health Source Statement," indicating that Z.J. had "marked limitation" in acquiring and using information, "extreme limitation" in interacting and relating with others, and "marked limitation" in caring for herself.  Doc. 14-8 at 65–67.

In 2014 and early 2015, Nicole Dumas—a therapist at the CED Mental Health

7

Center—listed Z.J.'s diagnoses as ADHD and Asperger's Syndrome, stating that Z.J. was struggling in school due to hyperactivity.  Doc. 14-8 at 68–102.  In the 2014-2015 school year, Z.J. failed first grade; she subsequently had to repeat that grade.  Doc. 14-14 at 5.

Beginning in April 2015, Jennifer Kilpatrick—another therapist at CED—noted that Z.J.'s schoolwork was going well, and that her experience at school had been improved by taking medication.  Doc. 14-8 at 111–15.  In September and October 2015, Z.J.'s only diagnosis by CED was ADHD.  Doc. 14-8 at 116; Doc. 14-14 at 21.  In November 2015, Z.J.'s treatment notes at CED indicated that she "made A/B honor roll but got conduct marks."  Doc. 14-8 at 118.  In 2016, her treatment notes indicated that Z.J. had frequent angry outbursts.  Doc. 14-8 at 119–20.

School records from the 2015-2016 school year showed that Z.J. made all As in the first 9 weeks of school.  Doc. 14-14 at 4–5.  In March 2015, Teresa Davenport—one of Z.J.'s elementary school teachers—completed another teacher questionnaire.  Doc. 14-7 at 56–62.  Davenport indicated that Z.J. had relatively significant problems acquiring and using information, had some problems attending and completing tasks, and had minor problems interacting and relating with others. Doc. 14-7 at 56–62.

In 2017, Z.J. again was seen at CED.  Doc. 14-14 at 66.  Treatment notes

indicated that Z.J. was getting into trouble at school, but that Z.J. did not exhibit typical symptoms of autism and there was "[n]o evidence of Autism Spectrum per client's clinical presentation and even in reviewing psychological testing completed by Dr. Sizelove in 2013 as he did not use gold standard assessments." Doc. 14-14 at 66.

In 2018, Z.J. returned to CED, where treatment notes indicated a history of ADHD, oppositional defiant disorder, and depression. Doc. 14-14 at 64. Z.J. was prescribed new medication, Vyvanse, for her ADHD. Doc. 14-14 at 65.

Multiple times in 2018 and 2019, Z.J. received disciplinary referrals at school. Doc. 14-13 at 51–60. Therapy notes from CED in 2019 and 2020 showed that Z.J. was struggling with anger, had altercations with family members, and sometimes bullied other children at school. Doc. 14-14 at 54–62.

## B.    Procedural history

### 1.    Initial application and denial of benefits

On October 4, 2013, an application for SSI benefits was filed on behalf of Z.J., based on autism disorder and other pervasive developmental disorders, with an alleged onset date of September 12, 2013. Doc. 14-3 at 13; Doc. 14-6; Doc. 14-4 at 12. The Commissioner initially denied benefits based on a finding that Z.J. was not disabled. Doc. 14-4 at 2–13; Doc. 14-5 at 8–12.

On December 16, 2013, Z.J.'s counsel requested a hearing before an ALJ.

Doc. 14-5 at 5.

### 2.    2015 ALJ hearing

The ALJ conducted an in-person hearing on June 2, 2015.  Doc. 14-3 at 59.  Quentince Jackson, Z.J.'s mother (and Plaintiff in this case), testified at the hearing.  Doc. 14-3 at 59–60.

Jackson testified that Z.J. was repeating first grade at the time of the hearing and was on a medication called Focalin for her ADHD.  Doc. 14-3 at 61–62.  Jackson testified that Z.J. had major behavioral problems at home, including bumping her head on purpose to go to sleep, being unable to focus on tasks, grabbing knives and chasing children with them, and defecating on herself and playing in it.  Doc. 14-3 at 62.  Jackson testified that Z.J. had been on Focalin for a while, that it had not helped, and that Z.J.'s doctor recently had increased the dosage but it still was not helping Z.J. focus.  Doc. 14-3 at 62–63.

In response to questioning from counsel, Jackson testified that Z.J. did not take special education classes, although her school had recommended them, because they were trying to control her focus with medication.  Doc. 14-3 at 63.  Jackson testified that Z.J. had significant behavioral problems at school, including fighting and an inability to stay on-task, but Z.J. herself interjected to disagree.  Doc. 14-3 at 64–65.  Jackson testified that Z.J. had crossed eyes but could see with her glasses, and that she frequently had headaches.  Doc. 14-3 at 66.  Jackson testified that Z.J.

did not play well with others, did not sleep well, and had episodes of violence and inappropriate language.  Doc. 14-3 at 67.  Jackson testified that Z.J. could not perform simple tasks, and that she reacted badly when she did not get attention.  Doc. 14-3 at 68.

### 3.    2015 ALJ decision

On July 29, 2015, the ALJ entered an unfavorable decision, denying Z.J.'s application for disability benefits.  Doc. 14-3 at 10–28.

The ALJ applied the three-step sequential disability evaluation standard for individuals under the age of 18 (*see* 20 C.F.R. § 416.914(a)).  Doc. 14-3 at 13–16. At step one, the ALJ found that Z.J. had not engaged in substantial gainful activity since the application date, and qualified as a school age child under 20 C.F.R. § 416.92a(g)(2).  Doc. 14-3 at 16.  At step two, the ALJ found that Z.J. had the following severe impairments:  "attention deficit hyperactivity disorder (ADHD), combined type; autism spectrum disorder, with intellectual impairment; persistent depressive disorder; and overanxious disorder of childhood."  Doc. 14-3 at 16.

At step three, the ALJ found that Z.J. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the "Listed Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Doc. 14-3 at 16–27.  In making this finding, the ALJ considered the following "Listings": 112.10 (autism spectrum disorder) and 112.11 (neurodevelopmental disorders), as well as

112.01 (category of impairments, mental disorders), 112.04 (depressive, bipolar and related disorders), 112.05 (intellectual disorder), and 112.06 (anxiety and obsessive-compulsive disorders).  Doc. 14-3 at 16.

The ALJ also determined that Z.J. did not have an impairment or combination of impairments that functionally equaled the severity of one of the Listed Impairments.  Doc. 14-3 at 16.  Thus, the ALJ concluded that Z.J. was not "disabled" under the Social Security Act for SSI purposes.  Doc. 14-3 at 26–27.

The ALJ's determination that Z.J. did not have an impairment or combination of impairments that functionally equaled the requisite severity was based on the ALJ's finding that, while Z.J.'s impairments could produce the reported symptoms, the statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible.  Doc. 14-3 at 17–27.  The ALJ provided an exhaustive summary of Jackson's testimony from the hearing.  Doc. 14-3 at 17–18. The ALJ gave partial weight to the opinion of the state agency, non-examining physician (Dr. Estock), because Dr. Estock did not have all of the relevant information.  The ALJ determined that the two teacher questionnaires in the record were highly probative of Z.J.'s "true functioning," but afforded little weight to the "Mental Health Source Statement" from Z.J.'s licensed counselor, Statom.  Doc. 14-3 at 20.  The ALJ did not state with particularity the weight given to the psychological evaluation report from Dr. Sizelove, the psychologist who examined

12

Z.J.  Doc. 14-3 at 12–27.

The ALJ found that Z.J. had a "marked limitation" in acquiring and using information, relying in part on Dr. Sizelove's opinion and the teacher questionnaires. Doc. 14-3 at 21–22.  The ALJ found that Z.J. had "less than a marked limitation in attending and completing tasks" and in interacting and relating with others, based on the teacher questionnaires.  Doc. 14-3 at 22–24.  The ALJ found that Z.J. had no limitation in moving about and manipulating objects, caring for herself, or health and physical well-being.  Doc. 14-3 at 24–27.  Thus, the ALJ determined that Z.J. did not have marked limitations in two domains of functioning or extreme limitation in one domain, so she was not disabled or entitled to benefits.  Doc. 14-3 at 27–28.

### 4.    2017 Appeals Council decision

On March 17, 2017, the Appeals Council denied Jackson's request for review of the ALJ's July 29, 2015 decision, finding no basis for changing the ALJ's decision.  Doc. 14-3 at 2.

### 5.    2018 federal court review and remand

Jackson filed a complaint in federal court, seeking review of the denial of benefits.  Doc. 14-10 at 30–31.  On December 4, 2018, the district court entered an order reversing and remanding the denial of benefits because the ALJ failed to state with particularity the weight given to Dr. Sizelove's opinion.  Doc. 14-10 at 33–42; *see supra* Background B.3.  Accordingly, the Appeals Council then remanded the

13

case back to the ALJ for further proceedings.  Doc. 14-10 at 47.

### 6.    2019 ALJ hearing (on remand)

On September 3, 2019, the ALJ conducted a video hearing in which Jackson again testified.  Doc. 14-9 at 70.  At the time of the hearing, Z.J. was in fifth grade and was not in special education classes, but Jackson testified that teachers had recommended special education.  Doc. 14-9 at 73.

Jackson testified that Z.J. had failed a grade and did not participate in physical education classes because she did not play well with others.  Doc. 14-9 at 73. Jackson also testified that she received complaints from the school about Z.J.'s behavior and performance.  Doc. 14-9 at 73–74.  Jackson testified that Z.J. was on medication but it did not help, and that the doctors were planning to increase the dosage.   Doc. 14-9 at 74.   Jackson testified that Z.J.'s medication gave her stomachaches and headaches.  Doc. 14-9 at 75.  Jackson testified that Z.J. would pick on others, chase neighborhood children and family members with knives, and constantly hit her head against things on purpose.  Doc. 14-9 at 76.  Jackson said that she had to complete simple tasks for Z.J., that Z.J. had trouble with her vision, and that Z.J. used bad language.  Doc. 14-9 at 77–79.  Jackson testified that in public Z.J. would do things like pull strangers' hair.  Doc. 14-9 at 78.

### 7.    2019 ALJ decision (on remand)

On October 23, 2019, the ALJ entered a second unfavorable decision on Z.J.'s

application for benefits.  Doc. 14-9 at 42–60.  The ALJ's decision noted at the outset that the ALJ was giving Dr. Sizelove's opinion a particular weight, in accordance with the remand order.  Doc. 14-9 at 45.

The ALJ again applied the three-step sequential disability evaluation standard for individuals under the age of 18 (*see* 20 C.F.R. § 416.914(a)).  Doc. 14-9 at 46–48.  The ALJ determined that Z.J. was a school age child who had not engaged in substantial gainful activity since the date of her application for disability.  Doc. 14-9 at 48.  The ALJ further determined that Z.J. had the following severe impairments: "attention deficit hyperactivity disorder (ADHD) combined type, oppositional defiance disorder (ODD), and persistent depressive disorder."  Doc. 14-9 at 48.  The ALJ found that Z.J. did not have an impairment or combination of impairments that met or medically equaled the severity of any "Listed Impairment" in the regulations.  Doc. 14-9 at 48–49.  The ALJ specifically stated that Z.J. had not presented any medical findings, arising from the application of medically acceptable clinical or diagnostic techniques, that proved that her impairments met or equaled a "Listing" for the required duration period, and that no acceptable medical sources had opined that her impairments met or medically equaled a Listing.  Doc. 14-9 at 49.

The ALJ then determined that Z.J. did not have any impairment or combination of impairments that functionally equaled the severity of the Listings.  Doc. 14-9 at 49–60.  The ALJ found that Z.J.'s medically determinable impairments

15

could reasonably be expected to produce her alleged symptoms, but that the statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Doc. 14-9 at 50. The ALJ considered evidence from the hearing, evidence from Z.J.'s teachers, and medical evidence, finding that Z.J.'s symptoms were actually normal to moderate and controlled when she was compliant with treatment, especially since 2015. Doc. 14-9 at 50–52. The ALJ emphasized that the testimony about the severity of Z.J.'s symptoms was belied by her ability to do well in school and avoid conduct issues while compliant with her medication and treatment regimen. Doc. 14-9 at 52.

The ALJ gave Dr. Estock's opinion partial weight because he did not have all of the newer evidence, including teacher questionnaires and new medical evidence, when he assessed Z.J.'s condition. Doc. 14-9 at 52. The ALJ gave Statom's opinion little weight because she was not a medical source, and because her opinion was contradicted by the record. Doc. 14-9 at 52–53.

The ALJ also gave Dr. Sizelove's opinion little weight because he provided a diagnosis but no functional limitations; further, the ALJ found that Dr. Sizelove's autism diagnosis was undermined by the failure to use "gold standard assessments." Doc. 14-9 at 53. The ALJ also noted that Dr. Sizelove's opinion was inconsistent with subsequent record evidence showing that Z.J. had progressed in school and that

16

her symptoms had improved with medication and treatment.  Doc. 14-9 at 53.

The ALJ found that Z.J. had a "marked limitation" in acquiring and using information.  Doc. 14-9 at 53.  The ALJ noted that Dr. Sizelove had found that Z.J.'s test scores were consistent with below average intellectual functioning, and that Z.J.'s teacher questionnaires showed some problems with reading and comprehension.  Doc. 14-9 at 53.

The ALJ then found that Z.J. had a less than marked limitation in attending and completing tasks, because her kindergarten teacher noted no problems in that domain and the other teacher questionnaire revealed only slight problems staying organized and focusing.  Doc. 14-9 at 54–55.  The ALJ also found that Z.J. had a less than marked limitation in interacting and relating with others because she had some behavioral and anger issues, but they were primarily at home rather than at school.  Doc. 14-9 at 56–57.  The ALJ noted that Z.J.'s teachers indicated that they had not observed problems with Z.J.'s social behavior, but both Davenport and Dr. Sizelove had observed problems with communication.  Doc. 14-9 at 57.  The ALJ found that Z.J. had no limitation in moving and manipulating objects, had no limitation in the ability to care for herself, and had no limitation in health and physical well-being, because there were no issues with those domains that could be attributed to developmental problems.  Doc. 14-9 at 53–60.

Accordingly, the ALJ found that Z.J. did not have marked limitations in two

domains of functioning or extreme limitation in one domain of functioning, so she was not disabled under the Social Security Act.  Doc. 14-9 at 60.

### 8.    2020 Appeals Council decision (on remand)

On August 7, 2020, the Appeals Council denied review of the ALJ's October 23, 2019 decision.  Doc. 14-9 at 2.  Despite denying review, the Appeals Council stated that the ALJ properly followed the directions of the district court, considered Dr. Sizelove's opinion, and provided a sufficient rationale for giving Dr. Sizelove's opinion little weight.  Doc. 14-9 at 2.  The Appeals Council also stated that Z.J. had not shown that she qualified as disabled under any Listing or Listing equivalence, and that substantial evidence supported the ALJ's decision.  Doc. 14-9 at 2–3.

### DISCUSSION

Having carefully considered the record and briefing, the court concludes that the ALJ's decision was supported by substantial evidence and based on proper legal standards.

### I.    Substantial evidence supported the ALJ's determination that Z.J.'s impairments did not meet or functionally equal "Listing 112.10" or "Listing 112.11."

Substantial evidence supported the ALJ's determination that Z.J.'s impairments did not meet or functionally equal "Listing 112.10" and "Listing 112.11."  Plaintiff Jackson argues that the ALJ erred in determining that Z.J.'s impairments did not meet or functionally equal Listings 112.10 and 112.11 because

the opinion of Dr. Sizelove supported a finding that Z.J.'s impairments met or functionally equaled those Listings.  Doc. 20 at 21–22; Doc. 22 at 2–3.

With respect to the relevant domains for functional equivalence, Jackson also argues that mental health records showed that Z.J. had "marked to extreme limitations in the area of Interacting and Relating with Others," as well as marked to extreme limitations in acquiring and using information, and attending and completing tasks.[2]  Doc. 20 at 22–29; Doc. 22 at 3–9.

    **A.**    **To meet "Listing 112.10" or "Listing 112.11," a claimant's impairments must meet certain requirements, including one "extreme limitation" or two "marked limitations" in four particular areas of mental functioning.**

To meet (or medically equal) "Listing 112.10" or "Listing 112.11," a claimant's impairments must meet certain requirements, including one "extreme limitation" or two "marked limitations" in four particular areas of mental functioning.  A child's impairments "meet" a Listing, if she actually suffers from the limitations specified in the Listing for her severe impairment.  *Wilson v. Barnhart*,

---

[2] Jackson's briefing also lists "Moving about and Manipulating Objects" as a domain in which Z.J. had marked to extreme limitation.  Doc. 20 at 25; Doc. 22 at 5.  But Jackson's briefing includes no argument about any limitation in moving or manipulating objects.  Doc. 20 at 22–29; Doc. 22 at 2–9.  Consequently, with regard to moving or manipulating objects, Jackson has not presented any issue for review.  *See, e.g.*, *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) ("[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes [this court from] considering the issue on appeal."); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (similar).

284 F.3d 1219, 1224 (11th Cir. 2002).  And a claimant's limitations "medically

equal" an impairment in the Listings, if they "are at least of equal medical

significance to those of a listed impairment."  20 C.F.R. § 416.926(a)(2).

In particular, Listing 112.10 (for autism spectrum disorder for children age 3-

to-18) requires the following:

> A.    Medical documentation of both of the following:
>
> > 1.    Qualitative deficits in verbal communication, nonverbal communication, and social interaction; and
> >
> > 2.    Significantly restricted, repetitive patterns of behavior, interests, or activities.
>
> *AND*
>
> B.    *Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning* (see 112.00F):
>
> > 1.    Understand, remember, or apply information (see 112.00E1).
> >
> > 2.    Interact with others (see 112.00E2).
> >
> > 3.    Concentrate, persist, or maintain pace (see 112.00E3).
> >
> > 4.    Adapt or manage oneself (see 112.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.10 (emphasis added).

Similarly, Listing 112.11 (for neurological disorders, including ADHD, for

children age 3-to-18,) requires the following:

> A.    Medical documentation of the requirements of paragraph 1, 2, or 3:
>
> > 1.    One or both of the following:

a.   Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or

b.   Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").

2.   Significant difficulties learning and using academic skills; or

3.   Recurrent motor movement or vocalization.

*AND*

B.   *Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning* (see 112.00F):

1.   Understand, remember, or apply information (see 112.00E1).

2.   Interact with others (see 112.00E2).

3.   Concentrate, persist, or maintain pace (see 112.00E3).

4.   Adapt or manage oneself (see 112.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11 (emphasis added).

As noted above, both Listing 112.10 and Listing 112.11 require "[e]xtreme limitation of one" or "marked limitation of two" of *four* specific "areas of mental functioning": "[u]nderstand, remember, or apply information"; "[i]nteract with others"; "[c]oncentrate, persist, or maintain pace"; and, "[a]dapt or manage oneself." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 112.10, 112.11.

**B.     Substantial evidence supported the ALJ's findings that the record did not show that Z.J. had one "extreme limitation" or two "marked limitations" in those four particular areas of mental functioning, or in any other relevant area of functioning (for functional equivalence).**

Substantial evidence supported the ALJ's findings that Z.J.'s impairments did not meet (or medically equal), or functionally equal, "Listing 112.10" or "Listing 112.11," because the record did not show that Z.J. had one "extreme limitation" or two "marked limitations" in those four particular areas of mental functioning or any other relevant area of functioning.  As an initial matter, the record shows that no medical source specifically opined that Z.J. met any "Listing" in the SSI context.  "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement."  *Wilson*, 284 F.3d at 1224.  Although Z.J. was diagnosed with autism and ADHD, none of Z.J.'s records equate her diagnoses with a Listing.  Further, while Dr. Sizelove diagnosed Z.J. with autism spectrum disorder in 2013 (Doc. 14-8 at 25), subsequent treatment notes showed that Dr. Sizelove did not use "gold standard" tests, and that Z.J. did not exhibit symptoms of autism.  Doc. 14-14 at 66.

Indeed, the ALJ found that Z.J. had not presented any medical findings, arising from the application of medically acceptable clinical or diagnostic techniques, that proved that her impairments met or equaled a Listing for the

required duration period, and that no acceptable medical sources had opined that her impairments met or medically equaled a Listing.  Doc. 14-9 at 49.  In this appeal, Jackson has not pointed to any qualifying medical findings that would call into question the ALJ's findings.

Regardless (and more importantly), substantial evidence supported the ALJ's findings that Z.J. did not have the limitations required to meet or functionally equal the Listings.  *See Wilson*, 284 F.3d at 1224.  As explained above, both Listing 112.10 (autism) and Listing 112.11 (ADHD) require that the claimant must show one "extreme limitation" or two "marked limitations" in the following four areas of functioning:  (1) "Understand, remember, or apply information"; (2) "Interact with others"; (3) "Concentrate, persist, or maintain pace"; and (4) "Adapt or manage oneself."  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 112.10, 112.11.

Practically speaking, here, the requirements to "meet" (or medically equal) either Listing are coextensive with the requirements for functional equivalence.  As explained above, functional equivalence to the Listings requires one "extreme limitation" or two "marked limitations" in the following six domains of functioning: (1) "acquiring and using information"; (2) "attending and completing tasks"; (3) "interacting and relating with others"; (4) "moving about and manipulating objects"; (5) "caring for yourself"; and (6) "health and physical well-being."  20 C.F.R. §§ 416.926a(a), 416.924a(b)(1)(i)–(vi).

23

With respect to Z.J., substantial evidence supported the ALJ's determination that Z.J. could not show an extreme limitation or two marked limitations in either the four particular areas of mental functioning required to meet Listing 112.10 or Listing 112.11 or in the (overlapping) six relevant areas of functioning required to functionally equal those Listings.

Significantly, on appeal, Plaintiff Jackson addresses only the three areas noted above—i.e., acquiring and using information, interacting and relating with others, and completing tasks.  *See* Doc. 20 at 22, 25–29; Doc. 22 at 5–9; 20 C.F.R. § 416.926a(b)(3).

> **1.      Substantial evidence supported the ALJ's finding that Z.J. did not have an extreme limitation in any relevant area of functioning.**

Substantial evidence supported the ALJ's finding that Z.J.'s impairments did not meet (or medically equal), or functionally equal either "Listing 112.10" or "Listing 112.11," because the record did not show that Z.J. had an extreme limitation in any relevant area of functioning.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 112.10, 112.11; 20 C.F.R. §§ 416.926a(a), 416.924a(b)(1)(i)–(vi).

As explained above, a claimant can show an "extreme" limitation only where a child's impairments "interfere[] very seriously" with her "ability to independently initiate, sustain or complete activities."  20 C.F.R. § 416.926a(e)(3).

In this case, the ALJ found that Z.J. did not have any extreme limitations.

Doc. 14-9 at 53–60.  While the record does show that Z.J. had some behavioral problems and anger issues (*see, e.g.*, Doc. 14-9 at 73–78; Doc. 14-14 at 54–62), it also shows that she was not in special education classes (Doc. 14-3 at 63; Doc. 14-9 at 73).  The record shows that Z.J. generally was able to perform reasonably well in school, including making A and A/B honor rolls.  Doc. 14-14 at 4–5; Doc. 14-8 at 118.  Further, Z.J.'s teachers did not indicate that Z.J. was severely limited, and in fact her kindergarten teacher (Bradley) indicated that Z.J. only had any trouble because she needed to wear her glasses.  Doc. 14-7 at 41–48, 56–62.

Thus, the record evidence shows that the ALJ had a substantial basis to find that Z.J. was able to perform at school, both in class and without very serious social problems, and the court cannot "reweigh the evidence," or substitute its own judgment for that of the ALJ.  *Winschel*, 631 F.3d at 1178.  Because the evidence supported the ALJ's finding that Z.J.'s impairments did not "interfere[] very seriously" with her "ability to independently initiate, sustain or complete activities" (20 C.F.R. § 416.926a(e)(3)), a reasonable person would accept the ALJ's finding that Z.J. did not suffer any extreme limitation.  *See Crawford*, 363 F.3d at 1158.

> **2.    Substantial evidence supported the ALJ's finding that Z.J. did not have two marked limitations in the relevant areas of functioning.**

Substantial evidence also supported the ALJ's finding that Z.J. did not have two marked limitations in the relevant areas of functioning.  *See* 20 C.F.R. Pt. 404,

Subpt. P, App. 1, §§ 112.10, 112.11; 20 C.F.R. §§ 416.926a(a), 416.924a(b)(1)(i)–(vi).

As explained above, a claimant can show a "marked" limitation only where a child's impairment "interferes seriously" with a child's "ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  As also explained above, here, the ALJ found that Z.J. had a marked limitation in the domain of "acquiring and using information," less than marked limitations in the domains of "interacting and relating with others" and "attending and completing tasks," and no limitations in the domains of "caring for [her]self," "moving about and manipulating objects," and "health and physical well-being."  Doc. 14-9 at 53–60.

The ALJ found that Z.J. had the single marked limitation in "acquiring and using information" (Doc. 14-9 at 53–60), based on Z.J.'s test scores and her difficulties with reading and comprehension.  Doc. 14-9 at 53.  Otherwise, substantial evidence supported the ALJ's findings that Z.J. had no marked limitation aside from the domain of "acquiring and using information."

As the ALJ explained, the questionnaires from Z.J.'s teachers were "highly probative of the claimant's true functioning as the teachers had daily contact with the claimant at the time the questionnaires were completed," and because those teachers were financially disinterested professionals.  Doc. 14-9 at 52.

Among other things, Z.J.'s kindergarten teacher—Bradley—indicated that

Z.J. had "NO problems" in interacting and relating with others, attending and completing tasks, caring for herself, and moving about and manipulating objects. Doc. 14-7 at 43–46 (emphasis in original). With respect to Z.J.'s health and physical well-being, Bradley indicated that Z.J. needed but did not wear glasses. Bradley stated that wearing glasses would improve Z.J.'s performance at school, but that she had not witnessed any other issues. Doc. 14-7 at 47. In fact, Bradley stated that she thought that, with glasses, Z.J. would be "very successful" at school. Doc. 14-7 at 48.

Another of Z.J.'s teachers—Davenport—did indicate that Z.J. had some serious problems in acquiring and using information, but not very serious problems. Doc. 14-7 at 56. However, Davenport indicated that Z.J. had "no problem" interacting and relating with others in 10 out of 13 categories, and had only "a slight problem" in the other 3 categories—each of which related to communication during conversation. Doc. 14-7 at 58.

In addition, Davenport indicated that Z.J. had "no problem" or only "a slight problem" with attending and completing tasks in 10 out of 13 categories. Doc. 14-7 at 57. Davenport also noted that Z.J. had no "very serious" problems with attending or completing tasks. Doc. 14-7 at 57.

Davenport indicated that Z.J. had no problems moving or manipulating objects, and had no problems caring for herself except for a "slight problem" in

knowing when to ask for help.  Doc. 14-7 at 59–60.  Davenport did not indicate knowledge of any medical problems, and stated that Z.J. did not often miss school due to illness.  Doc. 14-7 at 61.

Z.J.'s academic record as a whole and especially those teacher questionnaires supported the ALJ's finding that—other than in acquiring and using information—Z.J.'s impairments did not "interfere[] seriously" with her "ability to independently initiate, sustain or complete activities."  20 C.F.R. § 416.926a(e)(2).  Other record evidence also indicated that Z.J.'s symptoms were improved by medication.  Doc. 14-8 at 111–15.

While there is some record evidence indicating potential problems in some areas (*see, e.g.*, Doc. 14-9 at 76; Doc. 14-13 at 51–60; Doc. 14-14 at 54–62), the court must affirm a decision supported by substantial evidence, "[e]ven if the evidence preponderates against the Commissioner's findings."  *Crawford*, 363 F.3d at 1158.  Again, the court cannot "reweigh the evidence," or substitute its own judgment for that of the ALJ.  *Winschel*, 631 F.3d at 1178.  Here, a reasonable person would accept the relevant evidence as adequate to support the ALJ's finding that Z.J. did not have two areas of marked limitation.  Thus, substantial evidence supported the ALJ's finding that Z.J.'s impairments did not meet or functionally equal either Listing 112.10 or Listing 112.11.  *See id.*

**II.    Substantial evidence supported the ALJ's decision to afford little weight to the opinion of Dr. Sizelove.**

Substantial evidence supported the ALJ's decision to afford little weight to Dr. Sizelove's opinion.  Plaintiff Jackson argues that the ALJ failed to accord proper weight to Dr. Sizelove's opinion that Z.J. symptoms were consistent with diagnoses for autism and ADHD.  Doc. 20 at 29–30; Doc. 22 at 9–10.

For an application filed prior to March 27, 2017 (like the application in this case), an ALJ is required to evaluate every medical opinion in the record.  *See* 20 C.F.R. § 416.927(c).

In this regard, medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including symptoms, diagnosis and prognosis, and the claimant's physical or mental restrictions.  20 C.F.R. § 416.927(a)(1).  When determining the weight to afford to a given medical source's opinion, an ALJ considers numerous factors, including whether the doctor examined the claimant, whether the doctor treated the claimant, whether the doctor supported his or her opinion with evidence, whether the doctor's opinion is consistent with the record as a whole, and the doctor's specialty.  20 C.F.R. § 416.927(c).

The Eleventh Circuit has held that, whenever a treating healthcare provider (commonly referred to as a "treating physician") offers a statement reflecting judgments about the nature and severity of a claimant's impairments, the ALJ must

29

state with particularity the weight given to the opinion and the reasons for that weight. *Winschel*, 631 F.3d at 1178–79.

Furthermore, under the regulations applicable before 2017, "[a] treating physician's medical opinion must be given 'substantial or considerable weight' unless 'good cause' is shown to give it less weight." *Hargress v. Social Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 (11th Cir. 2018) (quoting *Winschel*, 631 F.3d at 1179). "With good cause, an ALJ may disregard a treating physician's opinion, but he must clearly articulate [the] reasons for doing so." *Winschel*, 631 F.3d at 1179 (quotation marks omitted; alteration in original).

The "good cause" required to disregard a treating physician's opinion exists in the following circumstances:  (1) the "treating physician's opinion was not bolstered by the evidence"; (2) the "evidence supported a contrary finding"; or (3) the "treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (quotation marks omitted).

The court will not "second guess" the ALJ's determination regarding the weight afforded to a treating physician's opinion, so long as the ALJ has articulated a specific justification. *Hunter v. Social Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

In the ALJ's decision at issue (that is, on remand), the ALJ clearly complied with the requirement to state with particularity the weight given to Dr. Sizelove's

30

opinion (*see Winschel*, 631 F.3d at 1178–79); the ALJ explicitly stated that Dr. Sizelove's opinion was given little weight (Doc. 14-9 at 59).

Moreover, the ALJ articulated good cause for giving Dr. Sizelove's opinion little weight. *See Hargress*, 883 F.3d 1305; *Winschel*, 631 F.3d at 1179. The ALJ explained that Dr. Sizelove's opinion did not describe Z.J.'s actual functional limitations, that later treatment notes indicated that Dr. Sizelove had not used "gold standard" tests for autism, and that subsequent record evidence showed that Z.J. had improved with medication and treatment for ADHD. Doc. 14-9 at 53. Thus, because the ALJ explained that Dr. Sizelove's opinion was conclusory and contrary to the rest of the record evidence (*see Winschel*, 631 F.3d at 1179), the ALJ properly demonstrated the good cause required to discount Dr. Sizelove's opinion.

Substantial evidence supported that determination. The majority of Z.J.'s records do not show an autism diagnosis (*see, e.g.*, Doc. 14-8 at 116; Doc. 14-14 at 21, 64), and later treatment notes indicated that Dr. Sizelove did not use the gold standard assessments for autism, that Z.J. did not present with symptoms of autism (Doc. 14-14 at 66), and that Z.J.'s condition improved when she took ADHD medication (Doc. 14-8 at 111–15). Given the evidence contradicting Dr. Sizelove's opinion, a reasonable person would find adequate record evidence to support the ALJ's decision to give that opinion little weight. *See Crawford*, 363 F.3d at 1158.

## CONCLUSION

For the reasons stated above (and pursuant to 42 U.S.C. § 405(g)), the court

**AFFIRMS** the Commissioner's decision.   The court separately will enter final

judgment.

**DONE** and **ORDERED** this March 2, 2022.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE